

1    Antonio Vernon

2    5300 South Shore Drive - #77

3    Chicago, Illinois 60615

4    312-401-8669

5    Plaintiff In Pro Per

FILED
CLERK, U.S. DISTRICT COURT

OCT 2 1 2016

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

Fee Paid

UNITED STATES DISTRICT COURT FOR

THE CENTRAL DISTRICT OF CALIFORNIA

9    Antonio Vernon,

10            Plaintiff,

11      vs.

12    CBS Television Studios,

13    CBS Corporation,

14    Anthony Zuiker,

15    ABC Studios,

16    The Walt Disney Company,

17    Dare To Pass,

18    Yahoo!,

19    Michael Seitzman,

20    Ann Donahue,

21    Carol Mendelsohn,

22    Erica Messner,

23    Cinema Gypsy

24    Laurence Fishburne

25    Rose Catherine Pinkney

26          Defendant(s)

Case No.: To be assigned

CV16-07857-BRC(AFMx)

**Complaint For Violation of Exclusive Rights To a Cybercrime Fighting Specialist Unit of a Crime Fighting Agency;**

**Complaint For Violation of Exclusive Rights To a Crime-fighting Character With Retrocognition and Vision Superpowers Who Owns a Wrigley Rooftop Building;**

**Complaint for Violation of Idea Submission Implied In Fact Contract With Cinema Gypsy;**

**and**

**Complaint for Violation of Idea Submission Implied In Law Contract With CBS Television Studios;**

LODGED
CLERK, U.S. DISTRICT COURT

OCT 20 2016

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

## **Jurisdiction**

1.  This court has jurisdiction under United States Code Title 28 Part IV Chapter 87 (especially section 1338 — aka 28 U.S. Code § 1338) and United States Code Title 17 Chapter 5 (especially sections 501 and/or 506 — aka 17 U.S. Code § 501 and/or 17 U.S. Code § 506). This is a copyrights case.

2.  This court has jurisdiction under United States Code Title 28 Part IV Chapter 85 Section 1367 (aka 28 U.S. Code § 1367) because "...in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy..." This covers the related implied contracts.

## **Venue**

3.  Venue is proper pursuant to United States Code Title 28 Part IV Chapter 87 (especially sections 1391 and/or 1400 — aka 28 U.S. Code § 1391 and/or 28 U.S. Code § 1400) because the defendants are mostly based in California.

## **Parties**

4. Plaintiff's name is Antonio Vernon. Plaintiff resides at 5300 South Shore Drive - #77, Chicago, IL 60615

The following is a list of defendants:

5. CBS Television Studios

Legal Department

Administration Bldg. Ste. 410

4024 Radford Ave.

1   Studio City, CA 91604 -2101

2

3   6. Lawrence Tu, General Counsel

4   CBS Corporation

5   51 West 52nd Street

6   New York, NY 10019-6188

7

8   7. ABC Studios

9   Legal Department

10  2300 West Riverside Drive

11  Burbank, CA 91506

12

13  8. Alan Braverman, General Counsel

14  The Walt Disney Company

15  500 South Buena Vista Street,

16  Burbank, California 91521-0001

17

18  9. Anthony E. Zuiker

19  c/o Margaret Riley

20  Lighthouse Management & Media

21  9000 West Sunset Blvd. - Suite 1520

22  West Hollywood, CA 90069

23

24  10. Dare to Pass

25  1117 Olvera Way

26  Las Vegas, Nevada 89128-0557

11. Ron Bell, General Counsel

Yahoo! Inc.

701 First Ave.

Sunnyvale, CA 94089-1019

12. Michael Seitzman

William Morris Endeavor Entertainment

9601 Wilshire Blvd. - 3rd Floor

Beverly Hills, CA 90210-5213

13. Ann Donahue

William Morris Endeavor Entertainment

9601 Wilshire Blvd. - 3rd Floor

Beverly Hills, CA 90210-5213

14. Carol Mendelsohn

William Morris Endeavor Entertainment

9601 Wilshire Blvd. - 3rd Floor

Beverly Hills, CA 90210-5213

15. Erica Messer

United Talent Agency

9336 Civic Center Drive

Beverly Hills, CA 90210-3604

16. Cinema Gypsy

4116 W Magnolia Blvd.

Burbank, CA 91505


17. Laurence Fishburne

Paradigm Talent Agency

360 North Crescent Dr.

North Bldg.

Beverly Hills, CA 90210-2500


18. Rose Catherine Pinkney

142 S Edinburgh Ave

Los Angeles, CA 90047


19. N.B.: This complaint lists the show creators, production studios and production studio parents of infringing shows of exclusive rights as the parties within the original jurisdiction of this complaint. This complaint only includes Laurence Fishburne, Rose Catherine Pinkney and Cinema Gypsy as parties to claims within the supplemental jurisdiction of this court. The public domain appears to be silent regarding whether Fishburne, Pinkney and/or Cinema Gypsy were credited or paid for production of content at issue herein. Fishburne left CBS' *CSI* franchise a month after my show was rejected. I see three possibilities. First, his departure from CBS was unrelated to the rejection of my show. Second, his departure resulted from a disagreement regarding credits for future CBS cybercrime ventures. In this case, he may left feeling he had been cut of money or credits that CBS did not feel it owed him. In this case, an implied in fact contract with Cinema Gypsy would support me also being owed a remedy. Third, his departure was a result of an under the table deal in which Fishburne, Pinkney and/or Cinema Gypsy were

paid to cut ties with CBS to leave me with no one to chase after regarding future CBS ventures involving cybercrime dramas. In this case, an implied in fact contracts with Fishburne, Pinkney and/or Cinema Gypsy and many other legal theories would support me being owed a remedy.

## **Statement of Facts**

N. B.: Items marked (PD) are in the public domain and can be found with a google search.

20. August 19, 2008: Laurence Fishburne signed to star in CBS' *CSI: Crime Scene Investigation* (*CSI*). (PD)

21. December 16, 2008: Laurence Fishburne signed a first-look deal between CBS Paramount Network Television (now CBS Television Studios) and his Cinema Gypsy production company. Rose Catherine Pinkney was selected to oversee the television arm of Cinema Gypsy. (PD)

22. It is my belief that what is described in the public record as a first look agreement between Cinema Gypsy and CBS Television Studios represents a combination of an express contract and an implied in fact contract between those two parties. Additionally, it is reasonable to assume that the first look agreement by CBS Television Studios represents an implied in law contract between CBS Television Studios and the various creators Cinema Gypsy was representing. I.e., by announcing the first look agreement, which is a statement that CBS would be evaluating Cinema Gypsy's productions at various stages of development, it was implied that CBS would do so while acting in good faith with all involved parties (many of whom never had a chance to formalize a non-disclosure agreement with them). Cinema Gypsy was agreeing to present ideas to CBS under the presumption that CBS would not misappropriate intellectual property without giving appropriate compensation and recognition to the creators (implied in law) and to Cinema Gypsy (express and/or implied in fact). This is an extension of *Montz v. Pilgrim Films & Television, Inc.* (2011) and similar to *Benay v. Warner Bros. Entertainment, Inc.* (2010).

23. December 11, 2009: my chapter 13 bankruptcy petition (Exhibit A) was entered into the United States Bankruptcy Court giving me five years to pay my debts and preserve my high credit rating. My bankruptcy estate addressed over $230,000 in unsecured debt.

24. Spring/Summer 2010, I started thinking of using my creativity and intellect to create television shows in order to pay my debts in full before my bankruptcy plan wiped out the majority of my debts and my credit rating.

25. N.B.: 3 of the 10 highest rated September 2009-May 2010 television season shows and 5 of the 10 highest rated September 2010-May 2011 television season shows were scripted crime fighting dramas.(PD)

26. N.B: then-current *CSI*, had won several Emmy Awards and then-current *The Closer* had won an Emmy and a Golden Globe award. (PD)

27. N.B.: *CSI* and *The Closer* were both scripted crime fighting dramas that had magnified the importance of a small aspect of all scripted crime fighting dramas (crime scene investigation and interrogation room techniques) to make them the focal point of every episode of their respective franchises.

28. N.B.: by 2010 computer technology and cyber activity were part of all crime fighting dramas.

29. I set about creating the first scripted crime fighting drama to have cybercrime as the focal point of every episode.

30. June 24, 2010: I create poor man's copyright (Exhibit B) for the *Cyber Police* based on the advice of actor Mel Jackson who I met at the Borders Café, formerly at 53rd Street and Lake Park Avenue.

31. August 2010: I met Noel Occomy at the same Borders Café.

32. August 25, 2010: in a 41-minute phone call at 21:06, he taught me about the Writer's Guild of America (WGA) registration process and talked me through the creation of a bible/synopsis.

33. September 2, 2010: I submitted (#1455639 Exhibit C) *Cyber Police* synopsis (Exhibit D) to the WGA. I am of the opinion that this date establishes my legal standing for exclusive rights to a cybercrime fighting specialist unit of a crime fighting agency, which I did not officially gain copyright certification until December 31, 2010. This is the date that I have proof of having a fixed tangible form of the work, I.e., notes in writing.

34. September 3, 2010: at 10:36, I called Occomy and asked if he would consider being my producer. We had several email communications which resulted in the revelation of my idea (by email delivery of my synopsis) and a non-disclosure agreement (Exhibit E) on September 7 with the latter backdated to September 3.

35. In meetings at Borders and phone calls, Occomy taught me several things about creating a show including outlining a full season episode list which became one of my first tasks. I sent him 22 loglines and 8 episode descriptions on September 13. Once I had 22 episodes described in a full paragraph each (September 15), I sent the 6-page document (Exhibit F) to Occomy for feedback. Once he responded with preferred episodes (November 2), I began writing episode scripts.

36. November 23, 2010: I submitted (#1471715 Exhibit G) *Cyber Police* pilot episode I (Exhibit H.c) (my original work of authorship) to the WGA with a 5-page bible/synopsis (Exhibit H.a) and full season episode list (Exhibit H.b)

37. December 13, 2010: I submitted (#1475048 Exhibit I) *Cyber Police* pilot episode II (Exhibit J) (my original work of authorship) to the WGA.

38. December 31, 2010: I submitted (#1477568 Exhibit K) *Cyber Police* pilot episode III (Exhibit L) (my original work of authorship) to the WGA.

39. December 1 – December 31, 2010: I submitted (PAU 003-511-833 Exhibit M) first three *Cyber Police* episodes (Exhibits H.c, J and L) to United States Copyright Office (USCO) plus Script I with an alternate ending (Exhibit N). The 5-page Bible/synopsis (Exhibit H.a) that was also submitted explicitly states that it is envisioned as a franchise with spinoffs that

include, but not limited to The *Cyber Police*: Special Victims Unit, The *Cyber Police*: Counter Terrorism Unit, and The *Cyber Police*: Financial Regulation Unit. I also submitted a full season episode list (Exhibit H.b).

40. In registering my *Cyber Police* copyright claim (that references my prior WGA registration), I established exclusive rights to crime fighting dramas that have cybercrime investigation units (field agents, support agents and a director) that solve cybercrimes with international implications as the central and focal point of each episode of the franchise,

41. January 14, 2011: I submitted (#1480269 Exhibit O) *Cyber Police* pilot episode IV (Exhibit P) (my original work of authorship) to WGA.

42. c. February 6, 2011: during the meeting regarding *Cyber Police* episode IV, Occomy and I split ways. I began looking for a new way to find a producer.

43. February 2011: I spoke with Cinema Gypsy's Rose Catherine Pinkney's assistant Ben several times. The following are (most likely outgoing) phone calls (Exhibits Q & R) between my cell phone and 818-655-6224 (2/11/11 11:30 1 min, 2/11/11 14:47 5 min, 2/11/11 14:59 1 min, 2/16/11 18:39 4 min, 2/18/11 17:10 2 min, 2/22/11 20:00 1 min, 2/25/11 17:00 1 min), Then incoming from 818-655-5000 (2/11/11 20:05 17 min). The incoming was a call from Ms. Pinkney.

44. As a matter of full disclosure, Ms. Pinkney was the cheerleading team captain at Princeton when I was a member of the team in the mid-1980s.

45. February 11, 2011: Rose Catherine and I had a 17 minute phone call. She informed me that any submission of a television series proposal to Cinema Gypsy for consideration and evaluation must be sent under the cover of a lawyer.

46. February 14, 2011: I asked Roy Amatore, Esq. if he would present *Cyber Police* documents to Cinema Gypsy on my behalf.

47. February 14, 2011, Amatore drafted correspondence (Exhibit S) to Rose Catherine Pinkney.

48. February 15, 2011: I formalized my request in writing by email to Amatore (Exhibit T).

49. February 16, 2011, I emailed Amatore (Exhibit U) a cover letter to Pinkney (Exhibit V), Script I 4th draft (Exhibit W) and 2-Paragraph description (Exhibit X).to Amatore for submission to Cinema Gypsy.

50. February 23, 2011: I believe Amatore eventually sent my submission via first class mail (even though it is dated February 14). Amatore has stated he is willing to sign an affidavit as to the actual date and his secretary has indicated that this is the date.

51. February 25, 2011: Phone records suggest that this was the date I confirmed Cinema Gypsy's receipt of my submission (last call to Ben).

52. Regardless of whether I signed a formal non-disclosure agreement with Cinema Gypsy, paragraphs 43- 51 above represent an idea submission implied in fact contract between me and Cinema Gypsy. I.e., the expectation was that they would "pitch" *Cyber Police* to their industry contacts on my behalf by some manner of presentation and should their efforts result in my idea being developed, there was reasonable belief for financial benefit to me.

53. February 25, 2011: I submitted (#1489278 Exhibit Y) *Cyber Police* pilot episode V (Exhibit Z) (my original work of authorship) WGA.

54. May 11, 2011: I request a status update by email from Cinema Gypsy by email (Exhibit AA)..

55. May 11, 2011: Ms. Pinkney rejects my submission by email from Cinema Gypsy (Exhibit AB).

56. May 19, 2011: I begin active efforts to solicit an agent using the WGA's agent list of literary and talent agencies in good standing as well as a few personal contacts.

57. June 7, 2011: Fishburne leaves *CSI*. (PD)

58. August 4, 2011: I submitted (#1524605 Exhibit AC) revised *Cyber Police* pilot episodes I-V (Exhibit AD) to WGA.

59. March 2012: production and casting for *Cybergeddon* began. (PD)

60. April 12, 2012: I submitted (#1573224 Exhibit AE) *Cyber Police* pilot episode 0 (my original work of authorship) to WGA in old and new formats A (Exhibit AF.a) & B (Exhibit AF.b).

61. July 17 - 31, 2012, I registered synopsis 1st Exhibit AG) & 2nd drafts (Exhibit AI.a), one-hour Scripts 1, 1st draft (Exhibit AH), Script 1, 2nd draft (Exhibit AI.b) and Script 2, 1st draft (Exhibit AI.c) with the USCO (PAU 3-627-006 Exhibit AK) for *Rewind* (July 31 WGA registration (#1598576 Exhibit AJ) only includes 2nd drafts of the synopsis and Script 1). Both scripts are my original work of authorship.

62. In registering my copyright claim, I established exclusive rights to a crime-fighting character with retrocognition and vision superpowers who owns a Wrigley Rooftop building.

63. September 25-27, 2012: *CSI* creator/producer Anthony Zuiker releases 9 episodes of *Cybergeddon* on Yahoo! The episodes total 88 minutes and 36 seconds (as a Netflix streaming film). (PD)

64. February 4, 2013, CBS orders *Intelligence* from Michael Seitzman (PD)

65. November/December 2013 I begin seeing television commercials on CBS for *Intelligence* and contact WGA regarding my legal options. They introduce me to the California Lawyers for the Arts.

66. December 4, 2013 (Exhibit AL): I uploaded a document to the California Lawyers for the Arts website requesting legal assistance for copyright infringement related to an upcoming television show for which commercials were being run. At the time, I was focused on the *Rewind* part of Cause of Action II.

67. January 7, 2014: *Intelligence* premiered on CBS, which is a cybercrime drama that uses a U.S. Cyber Command law enforcement agency. The show ran for 13 episodes ending March 31, 2014. (PD)

68. February 4, 2014 CBS ordered Scorpion to pilot from Alex Kurtzman and Roberto Orci. (PD)

69. February 18, 2014: CBS ordered *CSI:Cyber* to pilot. (PD)

70. April 30, 2014: *CSI* aired a backdoor pilot for *CSI:Cyber* (Season 14, episode 21 entitled "Kitty"), as a pschocybercrime drama show using a U.S. Cyber Command law enforcement agency. (PD)

71. June 16, 2014 *Cybergeddon* is made available on Netflix streaming service. (PD)

72. Scorpion premiered on September 22, 2014 and has since aired 22 season 1and 24 season 2 1-hour episodes and been renewed for a third season, (PD)

73. October 27, 2014 & November 9, 2014: I submitted (#1748309 and # 1750559 Exhibits AM &AN) revised *Cyber Police* pilot episodes 0-V (Exhibits AO & AP) to WGA. The latter date included all Format B versions.

74. November 16, 2014: *CSI* aired a crossover episode for *CSI:Cyber* (Season 15, episode 6 entitled "The Twin Paradox"). (PD)

75. February 24, 2015: I was granted discharge (Exhibit AQ). in my bankruptcy case, wiping out about 80% of my debts and my credit rating. By this time I had registered at least 2-hours of scripted television for 8 different television show concepts and 3 screenplays as original works of authorship with both the WGA and USCO.

76. March 4, 2015: *CSI:Cyber* debuted its 13-episode first season. (PD)

77. Scorpion season 1 was released on DVD on September 1, 2015. Season 2 followed on September 13, 2016 and the series is available on iTunes and Amazon Instant Video, among other services. (PD)

78. November 30, 2015: I renewed 6 Writers Guild of America *Cyber Police* certificates (#1455639, #1471715, #1475048, #1477568, #1480269, and #1489278 Exhibits AR-AW).

79. March 13, 2016: *CSI:Cyber* concluded its second and final season. (PD)

80. March 16, 2016: CBS premiered *Criminal Minds: Beyond Borders*, which had a 13 episode first season. (PD)

81. May 12, 2016: CBS cancelled *CSI:Cyber* after 31 episodes (plus 2 crossover episodes-see above). (PD)

82. September 14, 2016: I mail a complaint Complaint For Violation of Exclusive Rights To a Cybercrime Fighting Specialist Unit of a Crime Fighting Agency and Complaint For Violation of Exclusive Rights To a Crime-fighting Character With Retrocognition and Vision Superpowers Who Owns a Wrigley Rooftop Building to the United States District Court for the Central District of California

83. September 16, 2016: My complaint was delivered according to Stamps.com.

84. September 19, 2016: My complaint was filed as case 2:16-cv-07019-AB-GJS (referred to as 2:16-CV-7019-AB (GJSx) in some documents from the court).

85. September 19, 2016: My complaint was assigned to District Judge Andre Birotte Jr. and Magistrate Judge Gail J. Standish.

86. September 23, 2016: My complaint was entered.

87. 10 documents were entered before my form AO 240 (Application to Proceed in District Court Without Prepaying Fees or Costs) was denied on September 26 by Judge Standish and my case was dismissed on October 4 by Judge Birotte in a form CV-73 from the court.

88. May 16, 2016: CBS renewed *Criminal Minds: Beyond Borders* for a second season. (PD)

89. 17 U.S. Code § 101 – A "derivative work" is a work based upon one or more preexisting works,

90. 17 U.S. Code § 102 - In general: (a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated,

91. 17 U.S. Code § 103 The subject matter of copyright as specified by section 102 includes compilations and derivative works,

92. 17 U.S. Code § 104 - The works specified by sections 102 and 103, while unpublished, are subject to protection under this title without regard to the nationality or domicile of the author,

93. 17 U.S. Code § 106 - The owner of copyright under this title has the exclusive rights to do and to authorize any of the following: [reproduction, adaptation, publication, performance, and display, especially] (2) to prepare derivative works based upon the copyrighted work,

94. 17 U.S. Code § 501 (a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a),...is an infringer of the copyright or right of the author, as the case may be.

95. 17 U.S. Code § 501 (b) The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it.

96. 17 U.S. Code § 506 (a)(1) In general.—Any person who willfully infringes a copyright shall be punished as provided under section 2319 of title 18 (Criminal infringement of a copyright), if the infringement was committed— (A) for purposes of commercial advantage or private financial gain; (B) by the reproduction or distribution, including by electronic means, during any 180–day period, of 1 or more copies or phonorecords of 1 or more copyrighted works, which have a total retail value of more than $1,000; or (C) by the distribution of a work being prepared for commercial distribution, by making it available on a computer network accessible to members of the public, if such person knew or should have known that the work was intended for commercial distribution,

97. 17 U.S. Code § 506 Any person who (c) with fraudulent intent, places on any article a notice of copyright or words of the same purport that such person knows to be false, or who, with fraudulent intent, publicly distributes or imports for public distribution any

article bearing such notice or words that such person knows to be false (d) with fraudulent

intent, removes or alters any notice of copyright appearing on a copy of a copyrighted work

or (e) knowingly makes a false representation of a material fact in the application for

copyright registration provided for by section 409, or in any written statement filed in

connection with the application, shall be fined not more than $2,500.

98. California Civil Code section 3300: For the breach of an obligation arising from contract,

the measure of damages, except where otherwise expressly provided by this Code, is the

amount which will compensate the party aggrieved for all the detriment proximately caused

thereby, or which, in the ordinary course of things, would be likely to result therefrom.

99. California Civil Code section 3301: No damages can be recovered for a breach of contract

which are not clearly ascertainable in both their nature and origin.

100. California Civil Code section 3302: The detriment caused by the breach of an obligation

to pay money only, is deemed to be the amount due by the terms of the obligation, with

interest thereon..

101. California Civil Code section 3318: The detriment caused by the breach of a warranty of

an agent's authority, is deemed to be the amount which could have been recovered and

collected from his principal if the warranty had been complied with, and the reasonable

expenses of legal proceedings taken, in good faith, to enforce the act of the agent against his

principal.


## Cause of action I

(Violation of exclusive rights of copyright to prepare derivative works based upon the

copyrighted work)

{Violation of idea submission implied contract)

102. Whereas, in an attempt to pay my debts and avert a chapter 13 bankruptcy I began

creating television shows in 2010,

103. Whereas, scripted crime fighting dramas were highly viewed in 2010,

104. Whereas, scripted crime fighting dramas that isolated a common part of all scripted crime fighting dramas and made it the focal point of every episode of their franchise had recently been critically acclaimed,

105. Whereas, computer technology and cyber activity were part of all crime fighting dramas by 2010,

106. Whereas, I was and still am unaware of any prior crime fighting dramas that focus on cybercrime,

107. Whereas, I created *Cyber Police*, the first crime fighting drama to focus on cybercrime,

108. Whereas, I was diligent in protecting my *Cyber Police* intellectual property with Writer's Guild of America registrations (September 2, November 23, December 13, and December 31, 2010, January 14, February 25, and August 4, 2011, April 12, 2012, October 27 and November 9, 2014) and a United States Copyright Office submission (December 31, 2010),

109. Whereas, I submitted the *Cyber Police* to Ms. Pinkney, the head of the television arm of Laurence Fishburne's production company, Cinema Gypsy, in February 2011,

110. Whereas, Fishburne was the star of *CSI*, a show created and produced by Anthony E. Zuiker, at the time,

111. Whereas, Zuiker was thus Fishburne's boss in a sense at the time,

112. Whereas, Zuiker and his production company, Dare to Pass, began producing a crime fighting drama, *Cybergeddon*, about a cybercrime fighting specialist unit of a crime fighting agency for Yahoo! in March 2012,

113. Whereas, Yahoo! Released the 88-minute 9-episode *Cybergeddon* on September 25, 2012,

114. Whereas, *Cybergeddon* depicted the "FBI Cyber Nerve Center" a director and some of its support and field agents all of whom were cybercrime-specialists,

115. Whereas *Cybergeddon* showed a threat to the Los Angeles Municipal Water treatment plant and my Script 0 mentions "The electrical grid, the transit system, the waterworks and the traffic signals" as targets.

116. Whereas, in *Cyber Police* Script 0, the field egents needed to use the children of the villain to track her down in Europe (Greece). In *Cybergeddon*, the main field agent uses the daughter of the villain to trap him in Europe (Ukraine).

117. Whereas, *Cybergeddon*'s Chloe Jocelyn had romantic strife, *Cyber Police*'s Ashley Edwards has romantic strife in Script 0.(page 6)

118. Whereas, *Cybergeddon* depicted cybercrime that reached Prague, Ukraine, Hong Kong, Paris, Berlin and Sydney in various episodes,

119. Whereas, I am unaware of any previous series to focus on cybercrime specialists fighting international cybercrime that affects the United States in every episode,

120. Whereas, the statute of limitations regarding infringement of my intellectual property begins 3 years from when I knew or should have known of such infringement,

121. Whereas, no webseries were nominated at the 70th Golden Globe Awards when nominations were announced on December 13, 2012 for the January 13, 2013 presentation.

122. Whereas, the two major television awards presentations are the Golden Globe Awards and the Primetime Emmy Awards, which are both broadcasted on major television networks,

123. Whereas, the first webseries nominations for high critical acclaim came when the 65th Primetime Emmy Award nominations were announced on July 18, 2013 for the September 15, 2013 and September 22, 2013 presentations, including series such as House of Cards. Webseries also received nominations during the December 12, 2013 announcement for the January 12, 2014 71st Golden Globe Awards presentation,

124. Whereas, *Cybergeddon* had mostly won less prominent awards for digital/online content,

125. Whereas, web series were an overlooked format at the time of infringement,

126. Whereas, the 88-minute 9-episode short format (less than 10 minutes/episode) appeared less significant than full-length (half hour or full hour) webseries or television productions,

127. Whereas, I first took action to seek representation on December 4, 2013, as a result of Cause of Action II,

128. Whereas, I did not recognize an infringement until that time,

129. Whereas, the series/film was released in DVD format in March 2014,

130. Whereas, the series has been available on Netflix streaming since June 16, 2014,

131. Whereas, I have neither sold nor relinquished my rights for *Cyber Police*,

132. Whereas, I have not been credited for my exclusive rights to a cybercrime fighting specialist unit of a crime fighting agency by Zuiker, Dare to Pass or Yahoo!

133. Whereas, Zuiker, Dare to Pass and/or Yahoo! have violated my exclusive rights of reproduction, adaptation, publication, performance, and display,

134. Whereas, it is reasonable for me to expect financial compensation for my idea submission to Cinema Gypsy and they have violated an implied in fact contract by not seeing that I was either paid or credited,

135. Whereas, I was bankrupted and my unsecured creditors were only paid a small fraction of their interests as a result,

136. Be it resolved, that I bring copyright action against Anthony E. Zuiker, Dare to Pass and Yahoo! and implied contract action against Cinema Gypsy, Fishburne and Pinkney at this time.

## **Cause of action II**

(Violation of exclusive rights of copyright to prepare derivative works based upon the copyrighted work)

{Violation of idea submission implied contract)

137. Plaintiff, realleges paragraphs 85-105,

138. Whereas, Fishburne was the star of *CSI*, a show produced for and by CBS, at the time,

139. Whereas, Cinema Gypsy had a first look agreement with CBS at the time,

140. Whereas, superhero dramas are also popular,

141. Whereas, I created *Rewind*, a series about a crime fighting protagonist named Riley who owned a Wrigley Rooftop building and had superpowers including enhanced vision and retrocognition, on July 31, 2012, by registering content that included 2 self-authored 1-hour scripts at the WGA and USCO,

142. Whereas, CBS Television Studios ordered *Intelligence*, a show about a U.S. Cyber Command agent with retrocognition in February 2013 from Michael Seitzman and ABC Studios.

143. Whereas, the main character of *Intelligence* was a crime fighting human "advanced intelligent agent" with machine-like powers, including enhanced vision and retrocognition (the ability to "create a virtual snapshot" and "virtual evidence wall"),

144. Whereas, the main character's partner was named Riley and resided in a building with a prominent proximity overlook (see episode 2 phone conversation 7:24-7:39),

   a. Gabriel Vaughn: Have you found a place to live yet?

   b. Riley Neal: Turn to your left?

   c. Gabriel Vaughn: (looks through his blinds to see Neal on an overlooking balcony)

   d. Riley Neal: We call this proximity overlook.

   e. Gabriel Vaughn: Yeah, well, the rest of the world calls it stalking. (he hangs up)

145. Whereas, I consider it a violation of my exclusive right to parse my character's unique features into two characters,

146. Whereas, both *Intelligence* and *Cyber Police* use Washington, D.C.-based cybercrime units of larger law enforcement organizations,

147.  Whereas, *Intelligence* depicted a fictional division of the "U. S. Cyber Command" in Angel's Bluff, VA (rather than Ft. Mead, MD) with a dedicated cybercrime-focused team that responded to global threats,

148.  Whereas, *Intelligence* aired 13 episodes from January 7 – March 31, 2014.

149.  Whereas, the statute of limitations regarding infringement of my intellectual property begins 3 years from when I knew or should have known of such infringement,

150.  Whereas, I began seeing television commercials and reading articles on the internet about *Intelligence* in November or December 2013 and immediately knew I was being infringed upon,

151.  Whereas, I first took action to seek representation on December 4, 2013,

152.  Whereas, some critics doubt the publicized source of the show,

153.  Whereas, above I state why I feel my works are the inspirations for the show,

154.  Whereas, the series continues to be available on Amazon Instant Video, for video on demand through Walmart Vudu and as a digital download via iTunes, among other services,

155.  Whereas, I have neither sold nor relinquished my rights for either *Cyber Police* or *Rewind*,

156.  Whereas, I have not been credited for my exclusive rights to a cybercrime fighting specialist unit of a crime fighting agency by CBS Television Studios, Michael Seitzman or ABC Studios,

157.  Whereas, I have not been credited for my exclusive rights to a crime-fighting character with retrocognition and vision superpowers who owns a Wrigley Rooftop building by CBS Television Studios, Michael Seitzman or ABC Studios,

158.  Whereas, CBS Television Studios, Michael Seitzman or ABC Studios have violated my exclusive rights of reproduction, adaptation, publication, performance, and display,

159.  Whereas, it is reasonable for me to expect financial compensation for my idea submission to Cinema Gypsy and they have violated an implied in fact contract by not seeing that I was either paid or credited,

160.  Whereas, Cinema Gypsy did not seek any type of release upon my idea submission,

161.  Whereas, in order to prevent unjust enrichment to CBS due to its access to promising intellectual properties via its first look agreement, it is reasonable to expect that CBS will compensate the creators of these ideas for services rendered (producing promising intellectual properties).

162.  Whereas, I was bankrupted and my unsecured creditors were only paid a small fraction of their interests as a result,

163.  Be it resolved, that I bring copyright action against CBS Television Studios, CBS Corporation, Michael Seitzman, The Walt Disney Company and ABC Studios, implied in fact contract action against Cinema Gypsy, Fishburne and Pinkney and implied in law contract action against CBS Television Studios and CBS Corporation at this time.

|  | *Intelligenc* | *Rewind* |
| --- | --- | --- |
| Main protagonist | U.S. Cyber Command agent | Private Detective and Wrigley Rooftop owner/manager |
| Partner from another employer | U.S. Secret Service agent | Chicago Police Department officers |
| Enhanced vision | Infrared | Hyperzoo |
| Superpower | Cyber-rendering to view virtual replica of historical crime scene | True rewind vision to view true rendering of historical crime scene |
| Proximity overlook | Term used to describe view from partner's nearby balcony into protagonist's apartment | Applicable to the Wrigley Rooftop business |
| Riley | Name of main protagonist's partner | Name of main protagonist |
| Plastique | Cause of explosion in 2nd episode | Cause of explosion in 1st episode |
| Perfect memory | Computer chip integrated into his brain | Photographic memory |
| Stairwell | Rendering site in several of the first few episodes | Rendering site in second episode |

## **Cause of action III**

(Violation of exclusive rights of copyright to prepare derivative works based upon the copyrighted work)

{Violation of idea submission implied contract)

164.  Plaintiff, realleges paragraphs 85-105,

165.  Whereas, Fishburne was the star of *CSI*, a show created and produced by Anthony Zuiker for CBS, at the time,

166.  Whereas, Zuiker was thus Fishburne's boss in a sense at the time,

167.  Whereas, Cinema Gypsy had a first look agreement with CBS at the time,

168.  Whereas, CBS Television Studios ordered *CSI:Cyber* , a show about a Cyber Crime Division of the FBI by creators Ann Donahue, Carol Mendelsohn, and Anthony E. Zuiker to pilot on February 18, 2014

169.  Whereas, the April 30, 2014: *CSI* (Season 14, episode 21 entitled "Kitty") backdoor pilot for *CSI:Cyber* introduced us to FBI Special Agent Avery Ryan of the Cyber Crimes Division,

170.  Whereas, Ryan is a cyber psychologist specializing in cyber forensics who describes herself as a cyber cop as opposed to a science cop like the CSIs,

171.  Whereas, Ryan leads a team of cybercrime specialists fighting international cybercrime that affects the United States as the focal point of every episode,

172.  Zuiker describes *CSI: Cyber* Shot (talked to the NSA, DOD, CIA and FBI)

173.  Whereas, *CSI:Cyber* aired from March 4, 2015 – March 13, 2016,

174.  The April 8, 2015 "Crowd Sourced" episode 5 uses a set called "The Cave", Cyber Division's big secret weapon, which resembles "The Hole" from *Cyber Police*.

175.  The April 15, 2015 "The Evil Twin" episode 6 uses several scenes with overexaggerated drama about a spider. *Cyber Police* has an officer surnamed Spyder.

176.   The April 29, 2015  "L0m1s" episode 9 is a credit card information theft episode that resembles *Cyber Police* episode IV (registered at the WGA on January 14, 2011) because the theft occurred during a data dark period (plane flight).

177.   Whereas, the statute of limitations regarding infringement of my intellectual property begins 3 years from when I knew or should have known of such infringement,

178.   Whereas, the series was released in DVD format on September 15, 2015 (season 1) and September 6, 2016 (season 2).

179.   Whereas, the series continues to be available on Amazon Instant Video, on Hulu and as a digital download via iTunes, among other services

180.   Whereas, I have neither sold nor relinquished my rights for *Cyber Police*,

181.   Whereas, I have not been credited for my exclusive rights to a cybercrime fighting specialist unit of a crime fighting agency by CBS Television Studios, Ann Donahue, Carol Mendelsohn, or Anthony E. Zuiker,

182.   Whereas, CBS Television Studios, Ann Donahue, Carol Mendelsohn, or Anthony E. Zuiker have violated my exclusive rights of reproduction, adaptation, publication, performance, and display,

183.   Whereas, it is reasonable for me to expect financial compensation for my idea submission to Cinema Gypsy and they have violated an implied in fact contract by not seeing that I was either paid or credited,

184.   Whereas, Cinema Gypsy did not seek any type of release upon my idea submission,

185.   Whereas, in order to prevent unjust enrichment to CBS due to its access to promising intellectual properties via its first look agreement, it is reasonable to expect that CBS will compensate the creators of these ideas for services rendered (producing promising intellectual properties).

186.   Whereas, I was bankrupted and my unsecured creditors were only paid a small fraction of their interests as a result,

187. Be it resolved, that I bring copyright action against CBS Television Studios, CBS Corporation, Ann Donahue, Carol Mendelsohn, and Anthony E. Zuiker, implied in fact contract action against Cinema Gypsy, Fishburne and Pinkney and implied in law contract action against CBS Television Studios and CBS Corporation at this time.

## **Cause of action IV**

(Violation of exclusive rights of copyright to prepare derivative works based upon the copyrighted work)

{Violation of idea submission implied contract)

188. Plaintiff, realleges paragraphs 85-105,

189. Whereas, Laurence Fishburne was the star of *CSI*, a show produced for and by CBS, at the time,

190. Whereas, Cinema Gypsy had a first look agreement with CBS at the time,

191. Whereas, I submitted the *Cyber Police* to Fishburne's production company, Cinema Gypsy, in February 2011,

192. Whereas, I submitted a compendium of *Cyber Police* scripts (Script I, 5th draft, Script II, 4th draft, Script III, 3rd draft, Script IV, 3rd draft and Script V, 2nd draft) to the Writer's Guild of America on August 4, 2011,

193. Whereas, each of these scripts included route map content.

194. Whereas, a sample from Script I is as follows "On screen we see a world map and the first airplane route is shown from Washington, DC to San Jose. With each trip of the TV season a new route is added to this season route map…The season route map shows the addition of a trip from San Jose to Seattle…The season route map shows the addition of a trip from Seattle to Sydney."

195. Whereas, during The Criminal Minds: Beyond Borders introduction voiceover by Gary Sinise the destination for the episode is shown being added to the route map for the season.

196. Whereas, CBS aired a backdoor pilot for *Criminal Minds: Beyond Borders* from *Criminal Minds* on April 8.

197. Whereas, CBS Television Studios ordered *Criminal Minds: Beyond Borders* , a show about an international crime fighting task force by creator Erica Messer for ABC Studios and CBS Television Studios to pilot on May 8, 2015.

198. Whereas, *Criminal Minds: Beyond Borders* has aired from March 16, 2016– present,

199. Whereas, season 1 DVDs will be released on September 20, 2016

200. Whereas, the series continues to be available on Amazon Instant Video and as a digital download via iTunes, among other services

201. Whereas, I have neither sold nor relinquished my rights for *Cyber Police*,

202. Whereas, I have not been credited for my exclusive rights to a cybercrime fighting specialist unit of a crime fighting agency by Erica Messer, ABC Studios or CBS Television Studios,

203. Whereas, Erica Messer, The Walt Disney Company, ABC Studios, CBS Corporation, and CBS Television Studios have violated my exclusive rights of reproduction, adaptation, publication, performance, and display,

204. Whereas, it is reasonable for me to expect financial compensation for my idea submission to Cinema Gypsy and they have violated an implied in fact contract by not seeing that I was either paid or credited,

205. Whereas, Cinema Gypsy did not seek any type of release upon my idea submission,

206. Whereas, in order to prevent unjust enrichment to CBS due to its access to promising intellectual properties via its first look agreement, it is reasonable to expect that CBS will compensate the creators of these ideas for services rendered (producing promising intellectual properties).

207. Whereas, I was bankrupted and my unsecured creditors were only paid a small fraction of their interests as a result,

208. Be it resolved, that I bring copyright action against Erica Messer, ABC Studios, The Walt Disney Company, CBS Corporation and CBS Television Studios, implied in fact contract action against Cinema Gypsy, Fishburne and Pinkney and implied in law contract action against CBS Television Studios and CBS Corporation at this time.

## **Cause of action V**

209. Plaintiff, realleges paragraphs 85-105,

210. Whereas, Laurence Fishburne was the star of *CSI*, a show produced for and by CBS, at the time,

211. Whereas, Cinema Gypsy had a first look agreement with CBS at the time,

212. Whereas, I submitted the *Cyber Police* to Fishburne's production company, Cinema Gypsy, in February 2011,

213. Whereas, CBS ordered Scorpion to pilot on February 4, 2014 from Alex Kurtzman and Roberto Orci,

214. Whereas, Scorpion premiered on September 22, 2014 and has since aired 22 season 1 and 24 season 2 1-hour episodes,

215. Whereas, Scorpion has been renewed for a third season,

216. Whereas, Scorpion has been released on DVD (September 1, 2015 and September 13, 2016),

217. Whereas, Scorpion is available on iTunes and Amazon Instant Video, among other services,

218. Whereas, although CBS says the show is based on the Walter O'Brien story, hackers, computer enthusiasts and IT experts contest this claim due to contradictions, exaggerations and deceptions,

219. Whereas, I feel *Cyber Police* is the show's inspiration due to the similarities in the table below,

220. Whereas, I have neither sold nor relinquished my rights for *Cyber Police*,

221. Whereas, I have not been credited for my exclusive rights to a cybercrime fighting specialist unit of a crime fighting agency by Alex Kurtzman, Roberto Orci, CBS Corporation or CBS Television Studios,

222. Whereas, it is reasonable for me to expect financial compensation for my idea submission to Cinema Gypsy and they have violated an implied in fact contract by not seeing that I was either paid or credited,

223. Whereas, Cinema Gypsy did not seek any type of release upon my idea submission,

224. Whereas, in order to prevent unjust enrichment to CBS due to its access to promising intellectual properties via its first look agreement, it is reasonable to expect that CBS will compensate the creators of these ideas for services rendered (producing promising intellectual properties).

225. Whereas, I was bankrupted and my unsecured creditors were only paid a small fraction of their interests as a result,

226. I have considered bringing copyright action against Alex Kurtzman, Roberto Orci, CBS Corporation and CBS Television Studios, implied in fact contract action against Cinema Gypsy, Fishburne and Pinkney and implied in law contract action against CBS Television Studios and CBS Corporation at this time.

227. However, I decline to bring action unless legal counsel feels these show similarities are actionable.

| | Cyber Police | Scorpion |
| --- | --- | --- |
| Cases | Cybercrimes | Issues requiring genius solutions |
| Task force parent | Interpol | Homeland Security |
| Task force structure | Supervisor with 4 or 5 agents* | Supervisor with 4 or 5 agents* |
| Featured supporting character | Single mother with gifted child | Single mother with gifted child |
| Single Mother's specialty | Maternal sensitivity to cases with youth victims | Considering human emotions for computerlike thinkers |

* N.B. the count depends upon interpretation

## **Request for relief (original jurisdiction)**

228.  Whereas, the defendants have produced numerous episodes derived from my concept to create a crime fighting drama that focuses on cybercrime in violation of my exclusive rights to a cybercrime fighting specialist unit of a crime fighting agency,

229.  Whereas, the defendants have produced numerous episodes in violation of my exclusive rights to a crime-fighting character with retrocognition and vision superpowers who owns a Wrigley Rooftop building.

230.  Whereas, 9 15-minute episodes of *Cybergeddon* have aired on Yahoo!, been made available on DVD and on Netflix among other methods of distribution,

231.  Whereas, 13 1-hour episodes of *Intelligence* have aired on CBS, been made available at Amazon Instant Video, Walmart Vudu and through iTunes among other methods of distribution,

232.  Whereas, 31 1-hour episodes of *CSI: Cyber* and two 1-hour crossover episodes of *CSI* have aired on CBS, been made available on DVD, Amazon Instant Video, Hulu and iTunes, among other services.

233.  Whereas, the *CSI* franchise is syndicated for distribution in approximately 200 countries,

234.  Whereas, 13 1-hour episodes of *Criminal Minds: Beyond Borders* and one 1-hour crossover episodes of *Criminal Minds* have aired on CBS, been scheduled for DVD distribution, been made available on Amazon Instant Video and iTunes among other methods of distribution,

235.  Whereas the *Criminal Minds* franchise is widely syndicated for international distribution,

236.  Whereas, I began creating television shows and screenplays to pay my debts and avert a chapter 13 bankruptcy,

237.  Whereas, during my bankruptcy case, I created 8 television series (with at least two hours of scripted content for each) and 3 screenplays,

238. Whereas, it seems like at least two of my television show concepts have been infringed upon,

239. Whereas, my actual damages include the following:

   a. loss of past and future royalties and credits for episodes derived from my original works,

   b. costs of filing charges (printing, mailing and supplies),

   c. costs of copyrighting my works with the United States Copyright office and registering them with the Writers Guild of America

240. Whereas, I would ask the court to encourage a settlement of treble damages in terms of airing episodes of TV shows I have created for a total of 3*(9*.25+13*2+33+14)=225.75 episodes plus any equitable relief and punitive damages deemed appropriate

241. N.B.: if a treble damages settlement is reached, I would give an episode credit per 100 screens that one of my screenplays opens at (E.g., a release at 2500 screens would equal 25 episodes).

242. Whereas, I understand that a treble damages settlement is not among the statutory remedies available through the court,

243. Whereas, U. S. Code Title 17 Chapter 5 section 504 (17 U.S. Code § 504) notes that in general the acceptable remedy is compensation for actual damages and any additional profits of the infringer.

244. Whereas, I have been bankrupted due to this infringement

245. Whereas, I formerly had a credit rating that supported $250,000 in lines of credit and I now have only $250 in credit and am unable to qualify for a Costco or AARP credit card.

246. Whereas, my actual damages (including denied credit, escalated borrowing rates and loss of sold property) are ongoing,

247. Whereas, I had to sell numerous assets during my bankruptcy case,

248. Whereas, I have been forced to accept tens of thousands of dollars of charity from my family,

249. Whereas, all of the causes of actions are for infringing shows that continue to have revenues streams and one of those shows continues to be broadcast on network television.

250. Whereas, my best guess regarding the price CBS charges for advertising time for 73 hours of original network broadcasts plus repeats is in the $200-250,000 per 30 second commercial for approximately 20-22 hours of commercials, which is approximately $500 million.

251. Whereas the above episode counts only count original domestic broadcasts and I am aware that some episodes may have been replayed/rebroadcasted on CBS in season or during the summer season and that all episodes broadcasted on CBS since 2014 have also been broadcasted on CBS.com, generating additional revenue to the infringers,

252. Whereas CBS probably earns revenues from on-demand views from a variety of service providers (including Xfinity/Comcast which my condo subscribes to),

253. Whereas, I do not know how much CBS charges its affiliates for broadcasting rights,

254. Whereas, I do not know what the revenue streams are for ongoing sources such as Amazon, Hulu, Netflix, and/or DVD's.

255. Whereas, I do not know what the revenues are for international distribution,

256. Whereas, I do not know what the revenues will be for future syndicated broadcasts

257. Whereas, I am likely not aware of all sources of revenue for television shows,

258. I seek a just and equitable settlement, which would likely be in the 10s of millions of dollars.

259. N.B.: if I had to list a specific demand that would lead to resolution and avert protracted proceedings, I must note that the order of magnitude of the known revenues is my guide. Given that I have identified many sources of revenues, the first of which seems to be at

least $500 million, it is likely that total revenues exceed $1 billion and may be a few billion.

I feel the following are reasonable numbers in lieu of actual profits:

    a.  $600,310,470.87

    b.  treble damages production promises from Yahoo!, CBS and ABC, (with some benefits such as executive residences while in production)

    c.  Full payment of my interested parties (bankruptcy creditors),

    d.  Compensation for property sold during bankruptcy (treble value)

260. WHEREFORE, the plaintiff requests:

261. Compensatory damages, including plaintiff's actual damages plus defendant's unlawful profits;

262. Costs of the suit.

263. Any further relief which the court may deem appropriate.

264. Whereas, 18 U.S. Code § 2319 delineates special considerations for criminal infringement of copyrights,

265. WHEREFORE, the plaintiff requests full consideration of the elements of criminality and appropriate punishment if criminality is determined.

## **Request for relief (supplemental jurisdiction)**

266. Whereas California Civil Code section 3300 supports remedies that equal the amount of damages "which will compensate the party aggrieved for all the detriment proximately caused thereby" and ordinary resulting damages.

267. Whereas the code is silent as to whether the amount must be a monetary amount.

268. Whereas, the basic premise of contract remedies is to put the injured party in the position he would have been in had there been no breach, it seems that specific performance (production promises) is necessary to put me in a position where I would have a history as well as experience of television credits and a future of creator/writer royalties.

269. Whereas California Civil Code section 3301 limits remedies to damages that are "clearly ascertainable in both their nature and origin"

270. Whereas California Civil Code section 3302 supports interest on strictly monetary damages.

271. Whereas my "clearly ascertainable" damages go beyond monetary damages to include lost industry credits,

272. Whereas, the restitution seems appropriate since CBS has likely generated billions of dollars and has an ongoing revenue stream based on my idea and it is unclear who should keep these profits. However, it seems unusual that they should benefit from breaching a contract.

273. N.B.: Pinkney had a bilateral agency role. She was Cinema Gypsy's agent in terms of my submission to them. She and Cinema Gypsy were then my agents in "pitching" *Cyber Police* for consideration.

274. Whereas California Civil Code section 3318 notes that my agency-principal damages are limited to those that could have been collected from the principal. I.e., if Pinkney and/or Fishburne violated my implied contract, my remedies are limited to the amount I would be owed by Cinema Gypsy if there had not been a breach.

275. WHEREFORE, the plaintiff requests:

    a. a declaration that there exists an idea submission implied contract when a production studio delineates its submission requirements directly to a writer/creator and the writer/creator adheres to those requirements.

    b. A declaration that there exists an implied contract when a network studio enters a first look agreement with an individual or production studio to evaluate the content that it has access to and that this implied contract obligates the network studio to recognize and compensate the third party creators of the content it evaluates under this agreement.

276. WHEREFORE, the plaintiff requests:

    a.  Actual damages

    b.  Consequential damages

    c.  Incidental damages

    d.  Specific performance

    e.  Interest thereon

    f.  Restitution

## Demand for a Jury Trial

277. Plaintiff hereby requests a jury trial on all issues raised in this complaint.

## Exhibits

Please note that because I am a pro se plaintiff with approximately 2000 pages of exhibits and am ineligible for electronic filing until after my case has been initiated, I am initiating this case without any of the following exhibits. I will be filing an amended complaint after I am approved for electronic filing. I will submit my exhibits as electronic documents at that time.

278. Exhibit A – December 11, 2009 Bankruptcy Petition (1st 5 pages)

279. Exhibit B – June 23, 2010 *Cyber Police* Poor Man's Copyright (1 page)

280. Exhibit C – September 2, 2010 Writer's Guild of America certificate #1455639 (1 page)

281. Exhibit D – September 2, 2010 *Cyber Police* Bible/Synopsis (3 pages)

282. Exhibit E – September 7, 2010 Non-Disclosure Agreement (5 pages)

283. Exhibit F – September 15, 2010 *Cyber Police* Episode List & Paragraphs (6 pages)

284. Exhibit G – November 23, 2010 Writer's Guild of America certificate #1471715 (1 page)

285. Exhibit H – November 23, 2010 *Cyber Police* submission (42 total pages)

    a.  Bible (5 pages)

     b.  Episode List & Paragraphs (6 pages)

     c.  Script I (31 pages)

286.  Exhibit I – December 13, 2010 Writer's Guild of America certificate #1475048 (1 page)

287.  Exhibit J – December 13, 2010 *Cyber Police* Script II, 1st draft (46 pages)

288.  Exhibit K – December 31, 2010 Writer's Guild of America certificate #1477568 (1 page)

289.  Exhibit L – December 31, 2010 *Cyber Police* Script III, 1st draft (58 pages)

290.  Exhibit M – December 31, 2010 United States Copyright Office registration certificate (PAU 003-511-833  1 page)

291.  Exhibit N - November 30, 2010 *Cyber Police* Script I with alternate ending (33 pages)

292.  Exhibit O – January 14, 2011 Writer's Guild of America certificate #1480269 (1 page)

293.  Exhibit P – January 14, 2011 *Cyber Police* Script IV, 1st draft (67 pages)

294.  Exhibit Q– AT&T January 21-February 20, 2011 call detail (4 pages)

295.  Exhibit R – AT&T February 21-March 20, 2011 call detail (3 pages)

296.  Exhibit S - February 14, 2011 Submission letter from Roy Amatore, Esq. to Rose Catherine Pinkney (1 page)

297.  Exhibit T – February 15, 2011 Email request to Amatore to submit *Cyber Police* to Pinkney (1 page).

298.  Exhibit U – February 16, 2011 Email to Amatore with attachements to be forwarded to Pinkney (1 page).

299.  Exhibit V – February 14, 2011 Antonio Vernon Cover letter to Rose Catherine Pinkney (1 page)

300.  Exhibit W – February 14, 2011 *Cyber Police* Script I, 4th draft (65 pages)

301.  Exhibit X – February 14, 2011 Two paragraph *Cyber Police* synopsis (1 page)

302.  Exhibit Y – February 25, 2011 Writer's Guild of America certificate #1489278 (1 page)

303.  Exhibit Z – February 25, 2011 *Cyber Police* Script V, 1st draft (66 pages)

304.  Exhibit AA – May 11 status request email to Pinkney (1 page)

305. Exhibit AB - May 11, 2011 Decline email from Rose Pinkney (1 page)

306. Exhibit AC – August 4, 2011 Writer's Guild of America certification #1524605 (1 page)

307. Exhibit AD – August 4, 2011 *Cyber Police* Script I-V (354 total pages)

    a. July 11, 2011 Bible (7 pages)

    b. Episode List & Paragraphs (6 pages)

    c. Script I, 5th draft (71 pages)

    d. Script II, 4th draft (79 pages)

    e. Script III, 3rd draft (64 pages)

    f. Script IV, 3rd draft (64 pages)

    g. Script V, 2nd draft (63 pages)

308. Exhibit AE – April 12, 2012 Writer's Guild of America certification #1573224 (1 page)

309. Exhibit AF – April 12, 2012 *Cyber Police* scripts (132 total pages)

    a. Script 0 (format A), 1st draft (66 pages)

    b. Script 0 (format B), 1st draft (66 pages)

310. Exhibit AG – July 17, 2012 Rewind synopsis 1st draft (3 pages)

311. Exhibit AH – July 17, 2012 Rewind Script 1, 1st draft (58 pages)

312. Exhibit AI – July 31, 2012 Rewind scripts (127 total pages)

    a. Synopsis 2nd draft (5 pages)

    b. Script 1, 2nd draft (61 pages)

    c. Script 2, 1st draft (61 pages)

313. Exhibit AJ – July 31, 2012 Writer's Guild of America certificate #1598576 (1 page)

314. Exhibit AK – July 31, 2012 United States Copyright Office registration certificate (PAU 3-627-006 2 pages)

315. Exhibit AL – December 4, 2013 California Lawyers for the Arts Pro Bono Application (3 pages)

316. Exhibit AM – October 27, 2014 Writer's Guild of America certificate #1748309 (1 page)

317. Exhibit AN – November 9, 2014 Writer's Guild of America certificate #1750559 (1 page)

318. Exhibit AO – October 25, 2014 *Cyber Police* revised episodes 0-V (416 total pages)

    a. September 18, 2011 synopsis (6 pages)

    b. July 12, 2011 episode list and paragraphs (7 pages)

    c. Script 0, format B, 3rd draft (67 pages)

    d. Script I, format B, 12th draft (72 pages)

    e. Script II, 5th draft (77 pages)

    f. Script III, 4th draft (63 pages)

    g. Script IV, 4th draft (62 pages)

    h. Script V, 3rd draft) (62 pages)

319. Exhibit AP – November 9, 2014, *Cyber Police* revised episodes 0-V (422 total pages, all scripts format B)

    a. September 18, 2011 synopsis (6 pages)

    b. July 12, 2011 episode list and paragraphs (7 pages)

    c. Script 0, 4th draft (68 pages)

    d. Script I, 13th draft (73 pages)

    e. Script II, 6th draft (79 pages)

    f. Script III, 5th draft (64 pages)

    g. Script IV, 5th draft (62 pages)

    h. Script V, 4th draft (63 pages)

320. Exhibit AQ – February 24, 2015 Bankruptcy Discharge Order. (2 pages)

321. Exhibit AR – November 30, 2014, renewed registration for *Cyber Police* synopsis (1 page)

322. Exhibit AS – November 30, 2014, renewed registration for *Cyber Police* Script I (1 page)

323. Exhibit AT – November 30, 2014, renewed registration for *Cyber Police* Script II (1 page)

324. Exhibit AU – November 30, 2014, renewed registration for *Cyber Police* Script III (1 page)

325. Exhibit AV – November 30, 2014, renewed registration for *Cyber Police* Script IV (1 page)

326. Exhibit AW – November 30, 2014, renewed registration for *Cyber Police* Script V (1 page)

Dated this 17th day of October, 2016

Antonio Vernon, Pro Se
5300 South Shore Drive - #77
Chicago, Illinois 60615
312-401-8669

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
Case # to be supplied by the clerk
Judge, to be assigned

**ANTONIO VERNON,**
Plaintiff

vs.

**CBS TELEVISION STUDIOS, CBS CORPORATION, ANTHONY ZUIKER, ET AL.,**
Defendants

## <u>NOTICE TO THE COURT</u>

To:

United States District Court
Central District of California
Honorable Judge to be assigned
312 North Spring Street – Room G8
Los Angeles, California 90012

Attn: Civil Intake:

Herewith, I am submitting a $400 money order payable to the Clerk of the United States District Court and filing the following documents in triplicate (including one copy to be stamped and returned to me):
1. CV-71 (Civil Cover Sheet)
2. Pro se complaint
3. CV-30 (Notice of Interested Parties)
4. Request for Appointment of Counsel

Because I am a pro se plaintiff filing my case remotely by mail, and my complaint will not be assigned a number until it is received and filed, I will serve CV-108 (Waiver of Service of Summons) and AO 398 (Notice Of A Lawsuit And Request To Waive Service Of A Summons) once this complaint is assigned a number to refer my counterparties to.

Additionally, because my complaint includes approximately 2000 pages of exhibits, I will not be filing my exhibits until I have been granted permission for electronic filing. I will file a CV-005 (Application For Permission For Electronic Filing) once my complaint has been assigned a number. After my CV-005 has been ruled on, I will amend my complaint to include all exhibits.

Antonio Vernón, *pro se*　　　　　　　Dated this 17th day of October, A.D. 2016
5300 South Shore Dr. - #77
Chicago, IL 60615　　　　　　　　　By: *Antonio Vernón*
(mobile) 312-401-TONY (8669)　　　　　　　Antonio Vernón, *pro se*
(e-mail) amvernon@gmail.com
(efax) (215) 974-3312

# FLAT RATE ENVELOPE

**FLAT RATE POSTAGE REGARDLESS OF WEIGHT**
**DOMESTIC USE ONLY**

## FOR PICKUP CALL 1-800-222-1811

DOMESTIC USE ONLY
FLAT RATE PRIORITY MAIL
POSTAGE REQUIRED

▶ ▶ Pull To Open

◀◀

This packaging is the property of the U.S. Postal Service and is provided solely for use in sending Priority Mail. Misuse may be a violation of federal law.



## PRIORITY MAIL

UNITED STATES POSTAL SERVICE

www.usps.com

**HOW TO USE:**



**1. COMPLETE ADDRESS LABEL AREA**
Type or print required return
address and addressee information
in customer block (white area)
or on label (if provided).



**2. PAYMENT METHOD**
Affix postage or meter strip to area
indicated in upper right hand corner.



**3. ATTACH LABEL (If provided)**
Remove label backing and adhere
over customer address block area
(white area).

ANTONIO VERNON
5300 SOUTH SHORE DRIVE APT 77
CHICAGO, IL 60615

$6.450
US POSTAGE
PRIORITY
FROM 60615
OCT 17 2016
stamps.com



United States District Court
312 North Spring St Ste G8
Los Angeles CA 90012-2095

▲ **PLACE LABEL HERE** ▲

**The efficient FLAT RATE ENVELOPE.**
**You don't have to weigh the envelope...Just pack all your correspondence and**
**documents inside and pay only the FLAT RATE Priority Mail postage.**

**We Deliver.**

© EP14F FEBRUARY 2002 USPS ALL RIGHTS RESERVED

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☒ )

Antonio Vernon

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

CBS Television Studios, CBS Corporation, Anthony Zuiker, ABC Studios, The Walt Disney Company, Dare To Pass, Yahoo!, Michael Seitzman, Ann Donahue, Carol Mendelsohn, Erica Messner, Cinema Gypsy, Laurence Fishburne and Rose Pinkney

**(b)** County of Residence of First Listed Plaintiff  Cook, Illinois
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Los Angeles
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

5300 South Shore Drive - #77
Chicago, Illinois 60615

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

TBD

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multidistrict Litigation - Transfer
☐ 8. Multidistrict Litigation - Direct File

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No  (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☐ No  ☐ **MONEY DEMANDED IN COMPLAINT:** $ Equitable Relief

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

17 U.S. Code § 501 and 17 U.S. Code 506: Violation of exclusive rights of reproduction, adaptation, publication, performance and display.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☒ 820 Copyrights |
| ☐ 376 Qui Tam (31 USC 3729(a)) | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 400 State Reapportionment | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 410 Antitrust | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 430 Banks and Banking | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 450 Commerce/ICC Rates/Etc. | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 460 Deportation | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 480 Consumer Credit | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 891 Agricultural Acts | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 893 Environmental Matters | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 895 Freedom of Info. Act | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 896 Arbitration | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**  Case Number: CV16-07857

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes ☒ No<br><br>If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | | |
|---|---|---|
| ☐ Yes ☒ No<br><br>If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question B.2. |
| | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | | |
|---|---|---|
| ☐ Yes ☒ No<br><br>If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question C.2. |
| | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| D.1. Is there at least one answer in Column A? | D.2. Is there at least one answer in Column B? |
|---|---|
| ☐ Yes ☒ No | ☐ Yes ☒ No |
| If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E, below, and continue from there.<br>If "no," go to question D2 to the right. ➡ | If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question E, below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | WESTERN |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes ☒ No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**?          ☒ NO     ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?
                                                                                ☐ NO     ☒ YES

If yes, list case number(s):     2:16-cv-07019-AB-GJS

**Civil cases** are related when they (check all that apply):

☒ A. Arise from the same or a closely related transaction, happening, or event;

☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

---

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**   *Antonio Vernon*          DATE: October 17, 2016

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |